IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MEDICIS PHARMACEUTICAL CORP., | ) | |
| Plaintiff, | ) ) | Civil Action Nos.: |
| v. | ) ) | 09-033 (JJF) and 09-435 (JJF) (Consolidated) |
| MYLAN INC., et al., | ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF

John W. Shaw (#3362)
Karen E. Keller (#4489)
Pilar G. Kraman (#5199)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
1000 West Street, 17th floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
kkeller@ycst.com
pkraman@ycst.com

**OF COUNSEL:**
Shannon M. Bloodworth
**PERKINS COIE LLP**
607 Fourteenth Street N.W.
Washington, DC 20005-2003
(202) 628-6600

Scott D. Eads
**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th floor
Portland, OR 97209-4128
(503) 727-2000

David J. Harth
Melody K. Glazer
Jeff J. Bowen
**PERKINS COIE LLP**
1 East Main St., Suite 201
Madison, WI 53703
(608) 663-7460

*Attorneys for Mylan Inc. and*
*Matrix Laboratories Ltd.*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
**POTTER ANDERSON & CORROON LLP**
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

**OF COUNSEL:**
Edgar H. Haug
Angus Chen
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800

*Attorneys for Ranbaxy Inc. and Ranbaxy*
*Laboratories Ltd.*

Dated: December 15, 2009

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION .............................................................................................. 1

II.     BACKGROUND OF THE CLAIMED INVENTION ...................................... 2

        A.      U.S. PATENT NO. 5,908,838 .............................................................. 2

        B.      THE PENDING REEXAMINATION OF THE '838 PATENT ............................. 4

III.    APPLICABLE LEGAL STANDARDS ............................................................. 4

        A.      LEGAL STANDARDS FOR INDEFINITENESS UNDER 35 U.S.C. § 112 ......... 4

        B.      CLAIM CONSTRUCTION LEGAL STANDARDS ......................................... 6

IV.     DISPUTED CLAIM TERMS ............................................................................ 8

        A.      REDUCING THE INCIDENCE OR SEVERITY OF VESTIBULAR SIDE EFFECTS ............... 8

                1.      The claim term *reducing the incidence or severity of vestibular side effects* is indefinite. ............................................................. 9

                2.      Alternatively, Plaintiff's proposed construction of the claim term *reducing the incidence or severity of vestibular side effects* is incomplete. ........... 12

        B.      SLOWLY DISSOLVING DOSAGE FORM ................................................. 13

                1.      The claim term *slowly dissolving dosage form* is indefinite. .................... 14

                2.      Alternatively, Defendants propose a construction of the claim term *slowly dissolving dosage form* that is at least consistent with the relevant evidence. ............................................................. 15

        C.      DISSOLVES AT A RATE ........................................................................ 16

                1.      The claim term *dissolves at a rate* is indefinite. ....................................... 16

                2.      Alternatively, Defendants propose a construction of the claim term *dissolves at a rate* that is supported by the relevant evidence. ................. 17

V.      CONCLUSION................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

*Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336 (Fed. Cir. 2002) .................................. 11

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313 (Fed. Cir. 2003).............................. 6

*Application of Musgrave,* 431 F.2d 882 (C.C.P.A. 1970) ........................................................5-6

*Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342 (Fed. Cir. 2005) ......................*passim*

*Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335 (Fed. Cir. 1998)...................................7-8

*Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371 (Fed. Cir. 2001)........................ 4-5

*Halliburton Energy Services, Inc. v. M-I LLC,* 514 F.3d 1244 (Fed. Cir. 2008)........................... 9

*Markman v. Westview Industries, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) .........................................6-7

*Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996) ............................................... 6, 8

*MBO Labs., Inc. v. Becton, Dickinson & Co.,* 474 F.3d 1323 (Fed. Cir. 2007) .......................... 10

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,* 370 F.3d 1354 (Fed. Cir. 2004)............... 7

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351 (Fed. Cir. 2008) ................ 8

*Oakley, Inc. v. Sunglass Hut Int'l,* 316 F.3d 1331 (Fed. Cir. 2003) ............................................ 5

*Personalized Media Commc'ns, L.L.C. v. Int'l Trade Comm'n,*
   161 F.3d 696 (Fed. Cir. 1998) ............................................................................................... 5

*Phillips v. AWH Corp., Inc.,* 415 F.3d 1303 (Fed. Cir. 2005),
   *cert. denied,* 546 U.S. 1170 (2006)............................................................................. 6, 7, 9, 19

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298 (Fed. Cir. 1999) ............................ 10

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,* 459 F.3d 1311 (Fed. Cir. 2006)............. 7

*UCB, Inc. v. KV Pharm. Co.,*
   C.A. No. 08-223, 2009 WL 2524519 (D. Del. Aug. 18, 2009) ................................................. 5

*United Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228 (1942) ................................................ 5

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576 (Fed. Cir. 1996) ................................... 6, 19

| **Statutes** | **Page** |
|---|---|
| 35 U.S.C. § 112 | 4, 10, 20 |

| **Other Authorities** | **Page** |
|---|---|
| *Electronic Approved Drug Products with Therapeutic Equivalence Evaluations* (April 2007) | 1 |

## I.    INTRODUCTION

This is a patent infringement action brought under the Hatch-Waxman Act involving U.S. Patent No. 5,908,838 ("the '838 patent").  Plaintiff Medicis Pharmaceutical Corporation ("Plaintiff") has listed the '838 patent in the FDA's Orange Book[1] as purportedly covering its drug Solodyn® (minocycline HCl).  Solodyn is an "extended release" oral dosage form of minocycline HCl that is prescribed for treating moderate to severe acne.

Pursuant to the Court's October 9, 2009 Rule 16 Scheduling Order, Defendants Mylan Inc., Matrix Laboratories Ltd., Ranbaxy Inc. and Ranbaxy Laboratories Ltd. (collectively "Defendants") come before this Court to resolve disputes over three of the claim terms used in the '838 patent:  (1) *reducing the incidence or severity of vestibular side effects*, (2) *slowly dissolving dosage form* and (3) *dissolves at a rate*.  The meaning of each of these claim terms is indefinite and their scope and meaning cannot be ascertained from the '838 patent.  However, if the Court believes that the claims are sufficiently definite to be construed, then these terms should be construed in a manner consistent with the intrinsic evidence of the '838 patent and its file history as understood by a person of ordinary skill as of the filing date of the '838 patent application.

Plaintiff, on the other hand, requests the construction of only one claim term: *dissolves at a rate*.  However, Plaintiff's proposed construction for *dissolves at a rate* runs afoul of Federal Circuit precedent because it seeks to read a limitation into the claims in order to avoid invalidating prior art.  Plaintiff's contention that no construction is needed for the two remaining

---

[1] The FDA's publication, *Electronic Approved Drug Products with Therapeutic Equivalence Evaluations* (April 2007), which is available at www.fda.gov/cder/ob/default.htm, lists all the patent and exclusivity periods by drug product, and is commonly referred to as the "Orange Book."

terms in dispute – *reducing the incidence or severity of vestibular side effects*, or *slowly dissolving dosage form* – is also wrong as a matter of law.

## II.   BACKGROUND OF THE CLAIMED INVENTION

### A.   U.S. PATENT NO. 5,908,838

The '838 patent, entitled "Method for the Treatment of Acne," was filed on February 19, 1998, and issued on June 1, 1999.[2] The '838 patent is assigned to Plaintiff. The '838 patent claims are generally directed to a method of reducing "vestibular side effects" resulting from the use of oral tetracycline antibiotics to treat acne. Vestibular side effects include, among other symptoms, vertigo, dizziness and blurred vision. Eads Decl. Ex. A, '838 patent at col. 1, *ll.* 15-16. The claimed methods require the use of an oral tetracycline in a slowly dissolving dosage form. The dependent claims of the '838 patent specify that the tetracycline is minocycline. According to the '838 patent, "the dissolution rate of oral tetracycline antibiotics, especially minocycline, can affect the occurrence of vestibular side effects." Eads Decl. Ex. A, '838 patent at col. 1, *ll.* 47-49. The written "specification" of the '838 patent is unusually brief at less than 1 1/2 pages in length. The '838 patent has 18 claims:  independent claim 1, with claims 2-9 depending therefrom, and independent claim 10, with dependent claims 11-18 depending therefrom.

The four claims asserted against Defendants in this case are dependent claims 3, 4, 12 and 13. *See* C.A. No. 09-33 (D.I. 1); C.A. No. 09-435 (D.I.1). Claims 3 and 4 depend from claim 2, which in turn depends from claim 1; claims 12 and 13 depend from claim 11, which in turn depends from claim 10. Claims 1 through 4 and 10 through 13 are reproduced below, with disputed claim terms shown in bold typeface:

---

[2] A copy of the '838 patent is attached as Exhibit A to the *Declaration of Scott Eads in Support of Defendants' Opening Claim Construction Brief* ("Eads Decl.") filed herewith.

Case 1:09-cv-00033-LPS   Document 133   Filed 12/15/09   Page 7 of 27 PageID #: 943

1.  A method for **reducing the incidence or severity of vestibular side effects** resulting from the treatment of acne by the use of oral tetracycline antibiotics, comprising administering the oral tetracycline antibiotic in a **slowly dissolving dosage form**.

2.  The method of claim 1, wherein the oral tetracycline antibiotic is minocycline.

3.  The method of claim 2, wherein the antibiotic **dissolves at a rate** no faster than 15 percent in 15 minutes, 35 percent in 30 minutes, 50 percent in 45 minutes and 80 percent in 60 minutes.

4.  The method of claim 2, wherein the antibiotic **dissolves at a rate** no faster than 20 percent in 15 minutes, 50 percent in 30 minutes, 75 percent in 45 minutes.

* * *

10.  A method for **reducing the incidence or severity of vestibular side effects** resulting from the treatment of acne by the use of oral tetracycline antibiotics, comprising administering the oral tetracycline antibiotic in a **slowly dissolving dosage form**, wherein the dissolution of the antibiotic is substantially complete in less than 24 hours.

11.  The method of claim 10, wherein the oral tetracycline antibiotic is minocycline.

12.  The method of claim 11, wherein the antibiotic **dissolves at a rate** no faster than 15 percent in 15 minutes, 35 percent in 30 minutes, 50 percent in 45 minutes and 80 percent in 60 minutes.

13.  The method of claim 11, wherein the antibiotic **dissolves at a rate** no faster than 20 percent in 15 minutes, 50 percent in 30 minutes, 75 percent in 45 minutes.

Defendants have filed counterclaims alleging that their respective, proposed extended release minocycline products do not infringe any of the '838 patent's 18 claims. *See* C.A. No. 09-33 (D.I. 14, 16); C.A. No. 09-435 (D.I. 8).

According to Plaintiff, the alleged novelty of the '838 patent centers on the use of a "slowly dissolving" minocycline dosage form, including the specific dissolution profiles recited in the dependent claims. However, the '838 patent is utterly silent on

DB02:9037632.1                                    –3–                                    068098.1001

how to quantify the dissolution rate of a "slowly dissolving" dosage form. As discussed below, the '838 patent provides insufficient guidance on what is meant by the terms at issue, such as "slowly dissolving," "fast dissolving" and "reducing." Indeed, the entire '838 patent specification totals less than two pages in length and it omits critical elements needed for adequate disclosure of the claimed invention.

###### B. THE PENDING REEXAMINATION OF THE '838 PATENT

The '838 patent is currently under reexamination at the United States Patent and Trademark Office ("Patent Office"). A third party requestor (a non-party to this lawsuit) alleged that two new references, U.S. Patent No. 4,837,030 ("Valarose" or "the Valarose patent") and U.S. Patent No. 5,283,065 raise substantial new questions of patentability. The Patent Office agreed and commenced the reexamination. In two non-final Office Actions, the examiner has twice rejected the four asserted claims as anticipated by the Valarose patent.[3] *See* Eads Decl. Ex. B, Mar. 13, 2009 Reexam Office Action, Eads Decl. Ex. D, Nov. 10, 2009 Reexam Office Action.

### III. APPLICABLE LEGAL STANDARDS

#### A. LEGAL STANDARDS FOR INDEFINITENESS UNDER 35 U.S.C. § 112

The second paragraph of 35 U.S.C. § 112 requires that "[e]very patent's specification must 'conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.'" *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (quoting 35 U.S.C. § 112). The definiteness requirement of § 112 is met "[i]f one skilled in the art would understand the bounds of the claim when read in light of the specification." *Exxon Research & Eng'g Co. v. United*

---

[3] After the first non-final Office Action, Medicis cancelled, without prejudice, claims 1-2, 5-11 and 14-18, and amended claims 3, 4, 12 and 13 to be in independent form.

*States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). "According to the Supreme Court, '[t]he statutory requirement of particularity and distinctness in claims is met only when [the claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise.'" *Datamize*, 417 F.3d at 1347, quoting *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942). "The definiteness requirement, however, does not compel absolute clarity. Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite. Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning." *Datamize*, 417 F.3d at 1347 (citations omitted).

"A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Personalized Media Commc'ns, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998). "In the face of an allegation of indefiniteness, general principles of claim construction apply." *Datamize*, 417 F.3d at 1347, citing *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340-41 (Fed. Cir. 2003) (noting that a determination of definiteness "requires a construction of the claims according to the familiar canons of claim construction") (quotations and citations omitted); *see also UCB, Inc. v. KV Pharm. Co.*, C.A. No. 08-223, 2009 WL 2524519, at *9 n.4 (D. Del. Aug. 18, 2009) (finding "the Court may indeed consider indefiniteness during claim construction...") (citations omitted).

The Federal Circuit in *Datamize* rejected the argument that the subjective phrase "aesthetically pleasing" was not indefinite because the patent-at-issue "offered no objective definition identifying a standard for determining when an interface screen is 'aesthetically pleasing.'" 417 F.3d at 1350; *id.* ("The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention,")

(citing *Application of Musgrave*, 431 F.2d 882, 893 (C.C.P.A. 1970)).  "Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention." *Datamize*, 417 F.3d 1350; *id.* at 1352 ("[T]he definition of 'aesthetically pleasing' cannot depend on an undefined standard.") (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1342 (Fed. Cir. 2003) (finding claim requiring comparison to moving target to be indefinite since the patent failed to direct those of ordinary skill in the art to a standard by which the appropriate comparison could be made)).  "Reference to undefined standards, regardless of whose views might influence the formation of those standards, fails to provide any direction to one skilled in the art attempting to determine the scope of the claimed invention." *Datamize*, 417 F.3d at 1352.

### B.   CLAIM CONSTRUCTION LEGAL STANDARDS

Claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).  "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp., Inc.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006) (citations and quotations omitted).  The words of a claim "are generally given their ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313 (citations omitted). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

In the absence of ambiguity, claims should be construed based on the "intrinsic" evidence consisting of the patent itself and the prosecution file history of the patent. *Markman v.*

*Westview Industries, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) ("[I]deally there should be no 'ambiguity' in claim language to one of ordinary skill in the art that would require resort to evidence outside the specification and prosecution history.") "In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004). "Although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." *Phillips*, 415 F.3d at 1323. The Federal Circuit has called "reading a limitation from the written description into the claims" "one of the cardinal sins of patent law." *Id.* at 1319-20 (quotation and citation omitted). "To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Id.* at 1323. In addition to the claim language and the specification, the court also looks to the prosecution history as a source "available to the public that show[s] what a person of skill in the art would have understood disputed claim language to mean." *Id.* at 1314 (citations and quotations omitted).

A court may also consider "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (citations and quotations omitted). "Trial courts have the discretion to hear expert testimony in connection with claim construction issues." *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1319 (Fed. Cir. 2006). Consideration of such extrinsic evidence is most appropriate where, as here, the intrinsic evidence leaves some significant ambiguity concerning the meaning of disputed claim terms. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998) ("[I]f after

consideration of the intrinsic evidence there remains doubt as to the exact meaning of the claim terms, consideration of extrinsic evidence may be necessary to determine the proper construction."). Accordingly, Defendants submit herewith the *Declaration of Walter G. Chambliss, Ph.D. in Support of Defendants' Opening Claim Construction Brief* ("Chambliss Decl.").

Finally, Plaintiff states that no construction is needed for two of the disputed claim terms. By declaring that no construction is needed, Plaintiff is inviting this Court to commit clear error. "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citing *Markman*, 517 U.S. at 979). "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* at 1361. "When the district court failed to adjudicate the parties' dispute regarding the proper scope of [a claim term], the parties presented their arguments to the jury. By failing to construe [the] term, the district court left the jury free to consider these arguments." *Id.* at 1362. Declining to construe disputed claim terms at this juncture invites Plaintiff to argue at some later date the meaning of its choosing.

## IV.   DISPUTED CLAIM TERMS

### A.   *REDUCING THE INCIDENCE OR SEVERITY OF VESTIBULAR SIDE EFFECTS*

The term *reducing the incidence or severity of vestibular side effects* is present in all 18 claims of the '838 patent. It is recited in independent claims 1 and 10, and incorporated by reference into dependent claims 2-9 and 11-18. The parties' competing proposed constructions of this claim term are shown below:

| Defendants' Proposed Construction[4] | Plaintiff's Proposed Construction |
|---|---|
| The term is a limitation on the claims but is indefinite.<br><br>Or, if Plaintiff's construction is considered, it omits two critical elements (bolded):<br><br>Reducing the incidence or severity of vestibular side effects in **human subjects** as compared to those resulting from administration of the **same dose** of a fast-dissolving minocycline oral dosage form. | No construction needed.<br><br>Or in the alternative:<br><br>Reducing, as compared to a fast-dissolving dosage form of minocycline, the incidence or severity of vestibular side effects. |

1.    **The claim term** *reducing the incidence or severity of vestibular side effects* **is indefinite.**

Patent claims serve an important public notice function. *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).  For instance, the claims must be sufficiently definite in meaning and scope so that a would-be competitor can reasonably ascertain what would, or would not, infringe a patent's claims. *Id.* ("Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, *i.e.*, what subject matter is covered by the exclusive rights of the patent.").  The term *reducing the incidence or severity of vestibular side effects* is fatally indefinite because a person of ordinary skill in the art as of the time that the '838 patent was filed, February 19, 1998, would have had no possible means to determine the boundaries of that claim requirement.[5]  Likewise, a would-be competitor has no reasonable way to determine whether its proposed tetracycline dosage form

---

[4] Independent claims 1 and 10 would have the same construction with the term "tetracycline oral dosage form" substituted for "minocycline oral dosage form."  Unlike all the dependent claims of the '838 patent, the two independent claims are not limited to minocycline.

[5] The claims of a patent are construed as they would have been understood by a person of ordinary skill in the art as of the priority date of the patent, which in this case is the February 19, 1998 filing date of the '838 patent. *Phillips*, 415 F.3d at 1313 (citations omitted).

would or would not infringe claims containing this term.  Because claims containing this term

fail to fulfill their public notice function, they also fail to satisfy the definiteness requirement of

35 U.S.C. § 112, paragraph 2.

The ordinarily skilled artisan would have encountered an insoluble problem in attempting

to evaluate the meaning and scope of the '838 patent claims.  As Plaintiff concedes, the claims

require "reducing" vestibular side effects ("VSE's").  *See* Plaintiff's proposed claim construction

*supra* at 9; *see also MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330 (Fed. Cir.

2007) ("Where [a] term appears in a claim preamble, [and] it is 'necessary to give life, meaning,

and vitality to the claim,' [it] may be used as a limitation," citing *Pitney Bowes, Inc. v. Hewlett-*

*Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (quotation marks omitted).  But nothing in

the claims, the specification, or the prosecution history of the '838 patent provides any useful

guidance as to what that term means.  Nor would a person of ordinary skill in the art as of 1998

have had any knowledge or experience that would have enabled him to understand this claim

term.

Specifically, the unanswerable question is "reduced compared to *what*?"  Plaintiff

proposes that the claimed method reduces VSE's by comparison to those resulting from use of a

"fast dissolving dosage form" of minocycline.  However, the '838 patent provides absolutely no

guidance on what "fast dissolving" means other than the one specific example disclosed at

column 3, Table 2 of the patent (100% dissolved within 15 minutes).  Eads Decl. Ex. A, '838

patent, col. 3, Table 2.  Similarly, the '838 patent provides no guidance on what "slowly

dissolving" means beyond the preferred embodiment disclosed in Table 2 of the patent.

Moreover, "fast dissolving" and "slowly dissolving" were not terms of art that would have had

any objective meaning to a person of ordinary skill in the art.  Chambliss Decl. at ¶¶ 59-61.

Dividing oral minocyclines into "fast dissolving" and "slowly dissolving" categories is a purely arbitrary exercise unaided by any objective parameters. *Id.* at ¶ 62. For example, would a dissolution rate of 60% in 15 minutes be "fast" or "slow" under Plantiff's proposed construction? The '838 patent certainly does not answer that question, nor is it a question that a person skilled in the art could have answered. *Id.* at ¶ 63.

The complete lack of an objective standard for distinguishing fast and slow dissolving minocycline dosage forms renders the comparison suggested by Plaintiff's proposed claim construction an impossibility. *See Datamize*, 417 F.3d at 1350 (the absence of an objective standard for determining the satisfaction of a claim element requires a finding of indefiniteness). If one cannot distinguish what is "fast dissolving" from what is "slowly dissolving," one clearly cannot determine a reduction of VSE's arising from use of one versus the other. *Id.* As a result, Plaintiff's proposed claim construction is undefined and unworkable; the suggested comparison for determining whether a "reduction" of VSE's has occurred cannot be made. Accordingly, the term *reducing the incidence or severity of vestibular side effects* is indefinite. *Id.*

In order to lend any definiteness to the claim term, one would have to read into the claims the only example provided in the specification of a "fast dissolving" minocycline—a minocycline dosage form that is 100% dissolved within 15 minutes—as a basis for comparison (*e.g.*, "vestibular side effects are reduced *as compared to a minocycline that is 100% dissolved within 15 minutes*"). Chambliss at ¶ 61. However, reading that example into the claims would run afoul of a basic tenet of claim construction which says that the court *may not re-write the claims* in order to save them from indefiniteness. *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1349 (Fed. Cir. 2002) ("It is not our function to rewrite [indefinite] claims to preserve their validity."). The claims contain no recitation that "vestibular side effects are reduced *as*

*compared to a minocycline that is 100% dissolved within 15 minutes*"; there is no evidence that the patent applicant acted as its own lexicographer to define the term "fast dissolving" to have such a meaning; and as discussed above there is no objective method for determining a line of demarcation between "fast dissolving" and "slowly dissolving" minocycline dosage forms.  For at least these reasons, the claim term *reducing the incidence or severity of vestibular side effects* is fatally indefinite and cannot be construed.

> **2.    Alternatively, Plaintiff's proposed construction of the claim term** *reducing the incidence or severity of vestibular side effects* **is incomplete.**

If the Court decides to construe the disputed claim term *reducing the incidence or severity of vestibular side effects* despite the deficiencies described above, Defendants ask that it be construed to mean: *reducing the incidence or severity of vestibular side effects in human subjects as compared to those resulting from administration of the same dose of a fast-dissolving minocycline oral dosage form.*

While Defendants believe the disputed claim term to be indefinite, their proposed construction at least has the merit of being consistent with the available intrinsic evidence. Plaintiff's proposed construction is not.  Consistent with the teachings of the '838 patent, the claims, if construed as definite, should be limited to "human subjects" and the determination whether VSE's have been reduced should be based on administration of the same dose of the "fast dissolving" and "slowly dissolving" oral tetracycline.

The specification describes only a single study to support its claims.  This study was performed with human subjects that were given either a fast dissolving or a slowly dissolving dosage form of minocycline.  Eads Decl. Ex. A '838 patent at col. 2, *l.* 25 – col. 3, *l.* 44.  The doses for the subjects were adjusted on the basis of each subject's total body weight.  *Id.* Subjects weighing 50-69 kg were given a 100 milligram dose; subjects weighing 70-89 kg were

given a 150 milligram dose; and subjects weighing more than 90 kg were given a 200 mg dose. Eads Decl. Ex. A '838 patent at col. 2, *ll.* 31-34. Most pertinent, the dosing regimen was the *same* regardless of whether the subject was taking the fast dissolving dosage form or the slowly dissolving dosage form. Nothing in the intrinsic evidence supports Plaintiff's contrary position, which suggests that a fair comparison of the incidence or severity of VSE's could be obtained by administering *differing* doses of the fast dissolving and slow dissolving oral tetracycline. Nor is there anything to suggest that the oral tetracycline may be administered to non-humans for purposes of practicing the claimed invention.

Finally, Plaintiff's initial position that no construction is needed invites this Court to commit clear error, as explained in Part III.B, *supra.* Given the dispute between the parties concerning this claim term, the Court must decide, first, whether the claim term is indefinite, and if the Court concludes that it is not, then, second, it must decide which (if either) of the two competing proposed constructions is correct.

### B.    *SLOWLY DISSOLVING DOSAGE FORM*

The term *slowly dissolving dosage form* is present in all 18 claims of the '838 patent. It is recited in independent claims 1 and 10, and incorporated by reference into dependent claims 2-9 and 11-18. The parties' competing proposed constructions of this claim term are shown below:

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| The term is indefinite.<br><br>Or in the alternative:<br><br>The dosage form dissolves at a rate no faster than 40 percent in 15 minutes, 80 percent in 30 minutes, and 100 percent in 45 minutes. | No construction needed. |

### 1.      The claim term *slowly dissolving dosage form* is indefinite.

The claim term *slowly dissolving dosage form* is insolubly ambiguous and therefore indefinite.  One of ordinary skill in the art would not have understood the meaning of the term *slowly dissolving dosage form* as used in claims 1 and 10 of the '838 patent.  Chambliss Decl at ¶ 59.  This term was not an accepted or common term used by a person of ordinary skill in the 1997-1998 timeframe and still is not today.  *Id.*

More specifically, a person of ordinary skill would not have known how or where to draw a line of demarcation between "slowly dissolving" and "fast dissolving" dosage forms.  *Id.* at ¶ 61.  Neither term is defined by the '838 patent or its file history.  *Id.*  The specification states that "[v]arious commercial products containing minocycline as their active ingredient have a variety of the [sic] dissolution rates."  Eads Decl. Ex. A, '838 patent at col. 2, *ll.* 21-23.  The specification then goes on to describe one study comparing VSE's resulting from usage of a slowly dissolving minocycline with those resulting from use of a fast dissolving minocycline.  *Id.* at col. 2, *ll.* 23-25.  Only exemplary dissolution rates (or ranges of dissolution rates) are provided for these dosage forms.  Eads Decl. Ex. A, '838 patent at col. 2, *ll.* 1-19 and Table 2; Chambliss Decl. at ¶ 61.

Nothing in the patent, its prosecution file history, or the knowledge or experience of a person of ordinary skill in the art permits determination, for example, of whether a dissolution rate profile of 50% in 15 minutes, 65% in 30 minutes, 80% in 45 minutes and 95% in one hour is "slow" or "fast."  Any attempt to define it as one or the other would be purely arbitrary and unguided by any objective parameters provided by the patent or the knowledge of the ordinarily skilled artisan.  Chambliss Decl. at ¶¶ 62-63.  Consequently, the claim term *slowly dissolving dosage form* is indefinite.  *Datamize*, 417 F.3d at 1352 (claim term found indefinite in the absence of any objective criteria for determining its scope and meaning).

**2.**     **Alternatively, Defendants propose a construction of the claim term** *slowly dissolving dosage form* **that is at least consistent with the relevant evidence.**

If the Court decides to construe the disputed claim term *slowly dissolving dosage form* despite the deficiencies described above, Defendants ask that it be construed to mean: *the dosage form dissolves at a rate no faster than 40 percent in 15 minutes, 80 percent in 30 minutes, and 100 percent in 45 minutes.*

While Defendants believe this claim term to be indefinite for reasons stated above, their proposed construction is at least consistent with the intrinsic evidence. *See* Chambliss Decl. ¶¶ 64-69. Defendants' proposed construction, if anything, gives the patentee the benefit of the doubt by allowing the *fastest* of the dissolution rates disclosed anywhere in the '838 patent to set the outer boundaries of what it means to be "slowly dissolving." *See* Chambliss Decl. ¶¶ 67. However, given that the term "slowly dissolving" is not defined anywhere in the '838 patent or its prosecution history, and the fact that the term had no objective meaning to a person of ordinary skill in the art, Defendants maintain that Plaintiff is not entitled to *any* construction of this term owing to its irremediable indefiniteness.

Finally, Plaintiff's contention that no construction is needed for this disputed claim term invites this Court to commit clear error, as explained in Part III.B, *supra*. Given the dispute between the parties, the Court must, at a minimum, determine whether the claim term is indefinite.

C.   *DISSOLVES AT A RATE*

The term *dissolves at a rate* is recited in each of dependent claims 3-9 and 12-18 of the

'838 patent.  The parties' competing proposed constructions of this claim term are shown below:

| Defendants' Proposed Construction | Plaintiff's Proposed Construction |
|---|---|
| The term is indefinite.<br><br>Or in the alternative:<br><br>Has a dissolution rate as measured by a dissolution testing method known or used for oral tetracyclines or oral controlled release dosage forms as of the filing date of the '838 patent. | Dissolves as measured under standard U.S. Pharmacopeia test conditions at a rate. |

1.   **The claim term *dissolves at a rate* is indefinite.**

Strangely, for a patent whose dependent claims focus almost entirely upon specific

dissolution rate profiles, nowhere in the claims or in the written description of the claimed

invention does the '838 patent describe *how* to measure the claimed dissolution rates.  *See*

Chambliss Decl. at ¶¶ 32-33, 36-38.  This surprising omission takes on a special importance

when it is understood that measured dissolution rates depend heavily upon the specific test

methods used to determine them.  Indeed, dissolution rates can in some circumstances vary on

the order of *many fold* depending upon the pH and temperature of the dissolution medium, the

mechanics and force of the agitation (or stirring) used to assist the dissolution, the shape and size

of the dissolution container, and many other variables, *none of which* are described in the skimpy

two pages that comprise the entirety of the '838 patent disclosure.  Chambliss Decl. at

¶¶ 36-38, 40-41.  Due to the absence of any disclosure, this key claim term should be found

indefinite.

**2.      Alternatively, Defendants propose a construction of the claim term**
*dissolves at a rate* **that is supported by the relevant evidence.**

Plaintiff finds itself in the untenable position of arguing for a claim construction that it

has publicly stated *does not apply* to its allegedly patented Solodyn product *or* to generics of

Solodyn (such as Defendants' accused generic minocycline products at issue in the present case).

The file history of the pending reexamination of the '838 patent makes clear that Plaintiff has

taken this irreconcilable position in an attempt to stave off the immediate invalidation of all

claims of the '838 patent over the Valarose patent in the reexamination.  Eads Decl. Ex. B,

Mar. 13, 2009 Reexam Office Action, at 3-13; Eads Decl. Ex. C, May 13, 2009 Reply to Reexam

Office Action, at 3-6, 12; Eads Decl. Ex. D, Nov. 10, 2009 Reexam Office Action, at 4-5, 7 (two

Office actions rejecting pending claims of the '838 patent).  Indeed, Plaintiff has argued to the

Patent Office in the pending reexamination the very same construction that it is urging on the

Court here in order to overcome the Patent Office's claim rejections over Valarose.  *Id.*

However, the Patent Office has flatly rejected the proffered construction as not only improperly

importing a limitation into the claim, but also as being unsupported by the intrinsic evidence.

Eads Decl. Ex. D, Nov. 10, 2009 Reexam Office Action, at 14.  The Patent Office has also

maintained its rejection of the asserted patent claims.  *Id.*

The Patent Office correctly concluded that the '838 patent specification wholly fails to

support Plaintiff's proposed construction.  Specifically, in rejecting the phrase "as measured

under standard U.S. Pharmacopeia test conditions" as "new matter," the Patent Office explained

that "the specification fails to specifically describe the dissolution test conditions for dissolving

the extended-release formulation in Tables 1, 2 and 3." Eads Decl. Ex. D, Nov. 10, 2009

Reexam Office Action, at 7.  The Patent Office "carefully read the two pages" of the '838 patent

specification but "[could not] find any explicit support for this new limitation." *Id.*  Thus, the

Patent Office has found that Plaintiff's proposed construction is unsupported by the intrinsic evidence.

Neither the claims of the '838 patent nor the written description of the claimed invention provide *any* information concerning suitable methods for determining dissolution rates of the claimed minocycline.  For instance, in rejecting Plaintiff's proposed construction in the pending reexamination, the Patent Office correctly concluded that "at no point in the Summary of the Invention, the Detailed Description of the Invention, the Abstract or the claims does the inventor state explicitly that the dissolution data disclosed in the specification was generated by using the stated U.S. Pharmacopeia test conditions." Eads Decl. Ex. D, Nov. 10, 2009 Reexam Office Action, at 5.  Potential clues, however, are found in (1) the patent's description of the minocycline as "slowly dissolving"; and (2) the applicant's description of the minocycline as a "controlled release" dosage form during prosecution of the '838 patent. *See, e.g.*, Eads Decl. Ex. A, '838 patent at col. 2, *l.* 24 and cols. 3-4, claims 1 and 10; Eads Decl. Ex. E, Nov. 16, 1998 Amendment in '838 prosecution history at 3-4.  Plaintiff's prosecution history description of the minocycline as "controlled release" comports with its current contention that the '838 patent covers its Solodyn "extended release" minocycline products.  Both of these positions are in direct conflict, however, with Plaintiff's proposed construction that would limit the dissolution testing methods to "standard U.S. Pharmacopeia test conditions."  As discussed below, that is because U.S. Pharmacopeia ("USP") test conditions do not apply to controlled release (including extended release) dosage forms such as those encompassed by the claims of the '838 patent.

As Plaintiff has publicly acknowledged, USP test conditions *do not apply* to dissolution testing of extended release products. *See* Eads Decl. Ex. F, Plaintiff's Citizen Petition at 5; Chambliss Decl. at ¶ 38.  That is because the methods described in the USP in the 1997-1998

time frame were for immediate release minocycline dosage forms. *Id.* A person skilled in the art in February 1998 would have understood that dissolution testing of extended release products (also referred to as controlled release products) was governed by FDA Guidelines concerning extended and/or modified release dosage forms that were promulgated in 1993 and 1997 and were not part of any USP dissolution monograph. Chambliss Decl. at ¶¶ 43-45. Indeed, Plaintiff itself has publicly admitted that dissolution testing of Solodyn and its generics is governed by at least the aforementioned controlled-release FDA Guidelines and not the immediate release USP standards that it improperly attempts to read into its patent claims in order to avoid the Valarose patent. Eads Decl. Ex. F, Plaintiff's Citizen Petition at 5.

Plaintiff thus seeks a construction of the *dissolves at a rate* claim term that would impermissibly exclude a preferred embodiment of its claimed invention. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (constructions that would exclude a preferred embodiment are "rarely, if ever, correct"). Moreover, Plaintiff's construction commits a "cardinal sin" of patent law by seeking to improperly import a limitation from the specification into the claims. *Phillips*, 415 F.3d at 1320. Plaintiff's construction therefore fails as a matter of law. That Plaintiff is seeking such a construction under the exigencies of pending claim rejections explain why Plaintiff has taken this unsupported position. The extremity of Plaintiff's plight, however, does not justify a construction that would exclude the very embodiment of the claimed invention that gave rise to this lawsuit. Plaintiff's flawed claim construction that would read a limitation into the claim for the sole purpose of saving the '838 patent from invalidating prior art should be rejected. If the Court does not find the *dissolves at a rate* claim term to be indefinite, Defendants respectfully request the Court to adopt their proposed construction of this term because, unlike Plaintiff's proposed construction, it is consistent with the relevant evidence.

## V.       CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court find each of the three disputed claim terms to be indefinite in violation of 35 U.S.C. § 112, ¶ 2 of the Patent Act. If, however, the Court finds that any of these terms is not indefinite, then Defendants respectfully request that the Court adopt Defendants' proposed construction of the term.

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Pilar G. Kraman*
John W. Shaw (#3362)
Karen E. Keller (#4489)
Pilar G. Kraman (#5199)
1000 West Street, 17th floor
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
kkeller@ycst.com
pkraman@ycst.com

**OF COUNSEL:**

Shannon M. Bloodworth
**PERKINS COIE LLP**
607 Fourteenth Street N.W.
Washington, D.C. 20005-2003
(202) 628-6600

David J. Harth
Melody K. Glazer
Jeff J. Bowen
**PERKINS COIE LLP**
1 East Main St., Suite 201
Madison, WI 53703
(608) 663-7460

Scott D. Eads
**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th floor
Portland, OR 97209-4128
(503) 727-2000

*Attorneys for Mylan Inc. and*
*Matrix Laboratories Ltd.*

**POTTER ANDERSON & CORROON LLP**

*/s/ David E. Moore*
Richard L. Horwitz  (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19899
 (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

**OF COUNSEL:**

Edgar H. Haug
Angus Chen
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Avenue
New York, NY 10151
(212) 588-0800

*Attorneys for Ranbaxy Inc. and Ranbaxy*
*Laboratories Ltd.*

## CERTIFICATE OF SERVICE

I, Pilar G. Kraman, Esquire, hereby certify that on December 15, 2009, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Jack B. Blumenfeld, Esquire
>Karen Jacobs Louden, Esquire
>Morris, Nichols, Arsht, & Tunnell LLP
>1201 North Market Street
>Wilmington, DE 19899-1347

I further certify that on December 15, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

>Matthew D. Powers, Esquire
>Weil, Gotshal & Manges LLP
>201 Redwood Shores Parkway
>Redwood Shores, CA 94065

>Elizabeth Stotland Weiswasser, Esquire
>Peter Sandel, Esquire
>Jennifer H. Wu, Esquire
>Andrew Werner, Esquire
>Weil Gotshal & Manges LLP
>767 Fifth Avenue
>New York, NY 10153

DB02:8987659.1                                                                                                    068098.1001

YOUNG CONAWAY STARGATT & TAYLOR, LLP


*/s/ Pilar G. Kraman*
John W. Shaw (#3362)
Karen E. Keller (#4489)
Pilar G. Kraman (#5199)
The Brandywine Building
1000 West St., 17th Floor
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com

*Attorneys for Defendants Mylan Inc. and*
*Matrix Laboratories Ltd.*

2